HENNIG and another, Plaintiffs, vs. IRON RIDGE CANNING COMPANY, imp., Defendant: KEENEY, Intervenor, Respondent, vs. CLARK, Receiver, and others, Appellants.

*January 16—April 7, 1925.*

*Corporations: Winding-up proceedings: Equitable nature: Trial by jury: Advisory verdicts: Action by court: Sales: Seed peas: Breach of warranty: Failure to give notice until end of harvest.*

1. Proceedings by the creditors of an insolvent corporation to wind up its affairs are equitable, and in such proceedings there may be properly adjusted questions concerning claims against the corporation and its assets which might, except for the pendency of the proceedings, be more properly adjusted at law.  p. 509.

2. A creditor of an insolvent corporation having voluntarily applied in insolvency proceedings for relief as against the assets and funds of the insolvent in the receiver's hands, neither the receiver for himself nor for the insolvent can object that the intervenor continued to remain in the equitable action rather than resort to an independent action at law, though granted permission so to do.  p. 509.

3. Where the issues between the receiver and the intervening creditor as finally framed presented questions proper to be disposed of in equity, the verdict of the jury was advisory only, and the court could properly make changes therein or disregard the findings of the jury and substitute his own. p. 510.

4. There being no particular or special brand of Perfection peas known to the market or to the buyer as being grown by plaintiff as a particular grower, as distinguished from other seed peas of the Perfection brand or quality, the delivery of peas purchased by plaintiff from a reputable wholesale grower and dealer is a compliance with a contract for delivery of peas grown in specified states. p. 511.

5. Seed peas sold and delivered by the grower to a canning factory are *held,* under the evidence, to comply with a warranty as to their germinating quality and reasonably fit for the purpose for which they were sold. p. 513.

6. Failure of the buyer to give notice of any alleged breach of warranty on the part of the seller of the peas until July 10th, which was after the harvest was practically at an end, would prevent the buyer from recovering because of such breach, as he could have discovered any defects in the seed by June 1st and should have promptly notified the buyer, who could have thereupon, by examination or otherwise, acquainted himself with the situation. p. 513.

Appeal from a judgment of the circuit court for Dodge county: C. M. Davison, Circuit Judge. *Affirmed.*

In October, 1921, the plaintiffs herein, upon due proceedings, had *Royal L. Clark* appointed receiver of the defendant *Iron Ridge Canning Company,* a Wisconsin corporation, insolvent. Subsequently *Calvin N. Keeney,* a sole trader doing business as N. B. Keeney & Son, of Leroy, New York, a wholesale dealer in and grower of seed peas, intervened in said action asking certain relief as against such receiver, and upon issues framed between such intervenor, the receiver, and the individual defendants, a trial with a jury was had, and from the judgment directed to be entered by the court thereafter this appeal has been taken.

January 24, 1920, the defendant company, then a going concern and engaged in packing or canning green peas for commercial purposes in Dodge county, and intervenor, made a written contract, the material parts of which are as follows:

The sellers, in consideration of the covenants in the contract, agreed to furnish and sow or cause to be sown for the

said company, the buyer, 112,000 pounds (2,000 bu.) of Perfection peas at twelve cents per pound. The sellers agree to sow in the aggregate sufficient seed, on same basis of yield, to cover all of their contract. If the crop produced less than the estimated yield (based upon the average yield for five years), then the sellers are bound only to deliver the balance of their crop *pro rata* after reserving their own seed.

The sellers further agree to use due care in the protection, selection, growing, roguing, and handling of the seed stock and crops. The peas under this contract are to be delivered as soon as practicable after the harvest, in good, sound, merchantable condition suitable for seed purposes and to comply with the provisions of the seed laws of the state into which the peas are to be shipped. The sellers agree to keep peas grown in various fields separate, as far as possible, and to deliver them without blending and to designate the various lots by a properly marked tag on each bag when making delivery. The sellers give no warranty, express or implied, as to the quality or productiveness of the seed except as therein definitely stated. The sellers agree to deliver on this contract only such peas as they believe to be of good, merchantable quality and nearly if not perfectly free from mixtures or impurities of any kind.

The purchaser agrees to accept the goods on the terms and conditions noted.

Certain of the provisions as to terms of payment are here omitted except that it was provided as follows: "These goods are shipped upon the express condition that the title, ownership, and right of possession remain in the sellers until paid for in cash, and the sellers may take possession of the same wherever found. Settlement of bill by note or acceptance shall not divest the sellers of their title."

The sellers warrant that the seed to be delivered will be grown in the states of Montana, Idaho, Washington, or Wisconsin, and that it will show a germination test of not

less than ninety per cent. at the time of delivery, and shall not contain to exceed two per cent. by weight of impurities or other foreign matter.

It further provided, "Delivery f. o. b. St. Paul, Minnesota, f. o. b. Iron Ridge, Wisconsin, in C. L. shipments."

March 3, 1921, by mutual consent, the provision for 112,000 pounds of Perfection peas was changed by substituting 61,600 pounds (1,100 bu.) of Perfection and 54,000 pounds (900 bu.) of Alaska peas (there being a difference in the number of pounds per bushel in these two kinds).

March 29, 1921, the Perfection peas were shipped and received at Iron Ridge pursuant to contract, were unloaded and stored in the warehouse of the company, but none of it used for seeding purposes that year. The Alaskas were stored at *Keeney's* warehouse at Minneapolis.

Notes and renewals thereof were made for the Perfection and Alaska peas separately of $6,781.12 and $5,557, and indorsed by the individual defendants who were then interested in the company.

Early in October, 1921, the company, finding itself in financial difficulty, called a meeting of its creditors, the intervenor, *Keeney,* being present, and some conversation had with reference to the condition of the Perfection seed peas then in the company's warehouse. Subsequent to such meeting *Mr. Clark,* an attorney, and who had had considerable experience in connection with other canning companies in the sowing, harvesting, and canning of such crop, being appointed receiver as aforesaid, assumed charge of the company's affairs.

On November 2d the intervenor made a written demand on *Clark* as such receiver reciting the aforesaid contract and its modification; the delivery of the Perfection peas at Iron Ridge; the executing of the promissory notes for the same; the failure to pay; the protest thereof and the amount due thereon; reciting the ownership and right of possession of the peas until paid for in cash under said contract; and gave

notice that for the default in the performance by the company of the terms of the contract, and if such default should continue for twenty days thereafter, the said *Keeney* intends to and will on November 24th retake into his possession and remove from the premises of the company the said Perfection peas.

December 5th said *Keeney* petitioned the court in said receivership proceedings, upon notice to the receiver, for leave to bring an action against said receiver to recover the said lot of Perfection peas, it appearing that the receiver refused to deliver possession. The receiver appeared and presented an answer reciting facts as above stated and particularly that no shipment had been made of the Alaska peas, for which one of said promissory notes had been given, and that there was an entire failure of consideration as to such note, and further representing to the court that, if the petitioner be permitted to bring an action to determine the question as to the ownership of the Perfection peas then at Iron Ridge, such an order should be made upon condition that the 900 bushels of Alaska peas should be forwarded to Iron Ridge or the note therefor be delivered up for cancellation.

After hearing the court made an order that on condition *Keeney* forthwith ship the Alaska peas to Iron Ridge, that then he be permitted to sell at public auction both the Perfection and the Alaska seed peas on or before February 10, 1922, providing that the proceeds from such sale, after deducting the expenses, shall be applied as part payment on the total amount due him. And it was further provided that in case *Keeney* and said receiver were able to agree upon a price, the same may be purchased by the receiver. Thereafter a written stipulation was made reciting an agreement on a price of $4 per bushel for the entire 2,000 bushels, $5,000 to be in cash March 7, 1922, and $3,000 on or before September 1, 1922, with interest. And that such payment of $8,000, when completed, should be indorsed as a payment

upon the notes aforesaid.   This stipulation was ratified and confirmed by the court by order of March 28th.   The $5,000 was paid, but before the $3,000 became due and by letter of August 25th *Keeney* was notified by the receiver's attorneys that no further payments would be made.

August 29th application was made requiring the said receiver to show cause why he should not be compelled to carry out the provisions of the above order confirming said stipulation.

Upon hearing on September 23d the court suspended further proceedings on said order and directed that issue be joined between *Keeney* and the receiver covering the matter set forth in such application and the response thereto, and providing that *Keeney* be granted leave to sue the said receiver for the $3,000 and to include in his complaint a cause of action for the total sum in excess of the $8,000 due *Keeney* from the *Canning Company* and the several directors upon the notes aforesaid.

Pursuant thereto an order to show cause was obtained on behalf of said *Keeney* why the individual defendants who had indorsed the notes aforesaid should not be joined as parties defendant in the trial on the issues to be joined between *Keeney* and the receiver.   Upon the hearing such individual defendants appeared in person and by attorneys and objected thereto, and then agreed by stipulation that in case the prayer of the intervenor should be granted then service upon the several individual defendants would be waived and any pleading the receiver might interpose should be their pleading.

Thereupon the court did order that the said individual defendants be made parties in the action, issue to be joined between the intervenor and the said receiver, and that the pleadings should be as above recited.

Thereafter *Keeney* interposed his complaint for the recovery of the $3,000 upon the stipulation and order aforesaid, and as a second cause of action the promissory notes.

The answer and counterclaim of the receiver admitted the facts substantially as above recited, and by way of setoff and counterclaim recited the purchase by him as receiver in March, 1921, of the Perfection and Alaska peas for the particular purpose, and known to the said *Keeney,* of sowing or causing to be sown by farmers and growers of green peas in the vicinity of the plant of the *Canning Company,* and that in making such purchase the receiver relied upon the skill and judgment of *Keeney* as a seedsman, grower, and producer of seed peas; that the 1,100 bushels of Perfection seed peas were not reasonably fit for the purpose; that upon the sowing of the same for the season of 1922 they produced a poor crop; that the germination did not exceed sixty per cent.; that if it had been of the supposed quality as purchased it would produce much more than it did, and by reason of not being so suitable there was a damage to the *Canning Company* of $15,000; and praying judgment that the complaint be dismissed and that he have judgment as receiver against *Keeney* for damages. *Keeney* replied and separate answers were interposed on behalf of the *Canning Company* and the individual defendants as to the said second cause of action.

The case was brought for trial on March 26, 1923, before the circuit judge and a jury.

Objection was then interposed by *Keeney* to a trial by jury on the ground that the issues were for determination by the court without a jury. That objection being overruled, the intervenor requested a special verdict, which motion was granted.

Before the testimony was concluded the fact appeared from one of the intervenor's witnesses that the Perfection peas, although grown in the states mentioned in the contract of January, 1920, were nevertheless not sown or grown by the intervenor himself on any of his farms, but were purchased by him from another grower of seeds, the E. B.

Clark Company. Upon that fact being disclosed, the receiver and the individual defendants asserted that such fact showed a breach of the original contract between the intervenor and the *Canning Company* and that they desired to amend so as to assert such as an additional defense, which was allowed.

The special verdict as submitted to and answered by the jury follows, with the subsequent changes made by the trial court indicated in parentheses:

(1) Did defendant *Keeney* lead the officers of the *Canning Company* to believe that he had grown or caused to be grown the Perfection seed peas? *A.* Yes. (No.)

(2) In April, 1921, when the Perfection peas were delivered, were they reasonably fit as seed for the reproduction of green peas for canning purposes? *A.* No. (Yes.)

(3) Did the seed power or quality of the Perfection peas deteriorate or lessen as a result of being carried over from April, 1921, until 1922? *A.* Yes.

(4) How much? *A.* Not to exceed two per cent.

(5) Did the receiver make known to *Keeney,* either expressly or by implication, that the Perfection peas were to be distributed to the growers for a crop that was to be packed by the receiver? *A.* Yes.

(6) Did *Keeney* represent to the receiver that the Perfection peas were reasonably fit as seeds for the reproduction of green peas for canning purposes? *A.* Yes.

(7) Did the receiver in purchasing said pea seed rely on the above representation? *A.* Yes. (No.)

(8) Did the receiver in purchasing said Perfection peas rely upon the skill of *Keeney* as a grower? *A.* Yes. (No.)

(9) Did the receiver in purchasing rely on the judgment of *Keeney* that such peas were reasonably fit for the purpose of the purchase? *A.* Yes. (No.)

(10) At the time the receiver finally closed the deal for the purchase of the Perfection peas, were such reasonably fit as seed peas for the reproduction of green peas for canning purposes. *A.* No. (Yes.)

(11) Having answered (10) No, then at what time

ought the receiver to have discovered that such were not fit as seed? *A.* July 5th. (May 15th.)

(12) Having answered (10) No, then did the receiver, within a reasonable time after he ought to have known that the seed was not reasonably fit for reproduction, notify *Keeney* to that effect? *A.* Yes. (No.)

(13) Having answered (10) No, then did the receiver, within a reasonable time after learning that the pea seed was not reasonably fit, notify *Keeney* to that effect? *A.* Yes. (No.)

(14) Did the receiver have reasonable opportunity, if he so desired, of ascertaining the fitness of the seed by making germination tests prior to the delivery to the growers? *A.* No. (Yes.)

(15) Dependent upon the 14th being answered Yes, ought the receiver, in the exercise of ordinary care, to have made such test previous to delivering to the growers? Unanswered. (Yes.)

(16) Considering all the conditions during the growing season of 1922 and estimating a reasonably fit pea seed had been sown, what would have been a fair average crop over the 226 acres sown? *A.* 2,500 pounds per acre.

(17) Ought the receiver, by the exercise of ordinary care and observation of the condition of the growing crop, have discovered its condition in time to reasonably permit and require the giving of notice before he did? *A.* No. (Yes.)

(18) What damages accrued to the receiver, if any, as a natural and direct result of the unfitness of the seed peas? *A.* $7,738.68.

Subsequent to the verdict motions were made by the several parties. The court then determined as follows:

First, that the verdict of the jury is advisory only, and that his findings of fact and conclusions of law thereafter filed stated his views on all the issues.

Second, that even if the verdict was not merely advisory the answers to certain questions are unsupported by and contrary to the evidence and the verdict should in any event

be changed as above indicated; and further ordering that upon the verdict as so amended, and in any event, judgment should go for the intervenor as prayed in his complaint; and further, that if the verdict should be considered other than advisory, then it is the result of bias, passion, and prejudice of the jury and in the interests of justice should be set aside, and that the motions of the defendants should be denied.

The court then made and filed his findings of fact and conclusions of law in conformity with the action taken upon the verdict and directing the dismissal of the counterclaim of the receiver and directing the following judgment:

*Keeney* to recover from the receiver:

| | |
|---|---:|
| Damages | $3,000 00 |
| Interest | 259 00 |
| Costs | 212 58 |
| | $3,471 58 |

which sum is to be a first lien on the funds in the hands of the receiver.

*Keeney* to recover from the *Iron Ridge Canning Company* and the individual defendants:

| | |
|---|---:|
| Damages | $5,040 91 |
| Interest | 435 18 |
| Total | $5,476 09 |

For such amount *Keeney* to prorate with the other creditors of the *Canning Company* and any consequent deficiency to be recovered from the individual defendants.

From such judgment the defendants have appealed.

For the appellants there was a brief by *Lueck, Clark & Lueck* of Beaver Dam, and oral argument by *M. L. Lueck.*

For the respondent there was a brief by *Johns & Flanagan* of Randolph, attorneys, and *Grady, Farnsworth & Walker* of Portage, of counsel, and oral argument by *W. H. Farnsworth* and *A. E. Flanagan.*

The following opinion was filed February 10, 1925:

ESCHWEILER, J.    It is earnestly and ably contended on behalf of appellants in this case that the judgment of the court below ought not to stand for the following reasons:

First, that the issues involved were issues of fact proper to be disposed of in an action at law as distinguished from an equitable proceeding, and that the verdict of the jury must therefore be regarded as entitled to the same weight and consideration as though rendered in an action at law, and not merely advisory as held by the court below.

Second, that upon the facts and the verdict of the jury there was shown and determined such a failure in performance and breach of the conditions of the original contract as to prevent recovery thereon, inasmuch as the 1,100 bushels of Perfection peas were grown by the E. B. Clark Company, another wholesale dealer and grower of seed peas, and not by *Keeney*.

Third, that the Perfection seed peas were not in compliance with the warranty and not reasonably fit for the known purpose for which they were sold.

The original proceeding here, instituted by creditors of an insolvent corporation to wind up its affairs, was clearly equitable, and in such there might be properly adjusted questions concerning claims made against the insolvent corporation and its assets, which questions might, except for the pendency of these proceedings, be more properly adjusted in an action at law than in equity. *Harrigan v. Gilchrist*, 121 Wis. 127, 281, 99 N. W. 909.

The intervenor, *Keeney*, voluntarily applied in this equitable proceeding for relief as against the assets and funds of the insolvent then in the hands of a receiver and yielded to the suggestion of the receiver that the Alaska peas be also given over to his possession, and neither the receiver for himself or for the insolvent can be heard to object that

the intervenor continued to remain in this equitable action rather than resort to an independent action at law, though granted permission so to do. Such option is with the intervenor and its exercise cannot be controlled by the receiver. If there were error in denying a jury trial, as in an action at law, to the individual defendants, indorsers of the notes of the corporation, it must be held, in view of the result here reached upon the facts, non-prejudicial and therefore not reversible error.

As the issues were finally framed between all the parties, questions were presented that could be properly disposed of in the equitable proceeding to wind up the affairs of the corporation. There were involved questions as to what extent, if any, the claim of *Keeney,* if allowed, for the $3,000, was to be a first lien upon the trust funds; how much, if any, of a claim *Keeney* had on account of the original transaction against the corporation considering him as a general creditor merely.

We are therefore of the opinion that the court below properly held and viewed the verdict of the jury under the record here as advisory only and as presenting a situation where, for that reason, he might properly make the changes that he did in their answers or disregard their findings and substitute therefor his own findings of fact and direct the judgment he did.

Upon the second proposition above stated we think the trial court was right. The original contract of January, 1920, provided that *Keeney* should grow or cause to be grown Perfection seed peas in the states of Montana, Idaho, Washington, or Wisconsin, and that such seed shall show a germination quality of not less than ninety per cent. at the time of delivery and shall not contain to exceed two per cent. by weight of impurities or other foreign matter. It also provided that *Keeney* gives no warranty, express or implied, as to the quality or productiveness of the seed except

as therein definitely stated, and agreed to deliver on that contract only such peas as he believed to be of good, merchantable quality and nearly, if not perfectly, free from mixtures or impurities of any kind. *Keeney* further agreed to use due care in the production, selection, growing, roguing, and handling of the seed stock and crops and to keep the peas grown in various fields separate as far as possible.

It appeared on the trial that as a matter of fact the Perfection seed peas had not been grown under the personal care or selection of *Keeney* but had been purchased, his own supply being insufficient, from another reputable and well established wholesale grower and dealer in peas, and that such peas had been grown within the designated states. It further appears that such method of purchasing seed peas from other wholesalers and growers was a recognized custom among such growers and wholesalers. *Ross v. Northrup, King & Co.* 156 Wis. 327, 340, 144 N. W. 1124.

Under the evidence the trial court properly found that there was no particular or special brand of Perfection peas known to the market or to the buyer here as being grown by *Keeney* as a particular grower as distinguished from other seed peas of the Perfection brand or quality; in other words, that there was no *Keeney* brand of Perfection brand of seed peas. The contract itself, by its express terms, provided for Perfection peas as such in general terms and not for any particular brand or special sort of Perfection peas, and there is no showing whatever, under the testimony, that *Keeney* expected to or was expected to furnish any other than that which was designated as Perfection seed peas grown in four designated states. The very language of the contract covering not only seed peas grown by *Keeney* but those which he should cause to be grown, even though coupled with the agreement on *Keeney's* part to use due care in the production, selection, growing, etc., of the seed stock

and crops, cannot be relied upon as making an express condition on *Keeney's* part to perform the evidently impossible duty of personal and individual supervision of the actual growing of all these seed peas.

We are therefore satisfied that under the contract and the facts in the record there can be no successful defense interposed for the *Canning Company* or the individual defendants under the original contract of January, 1920, as modified in March.

On the last proposition involved we are satisfied that the trial court reached the proper conclusion. ·The peas delivered in pursuance to the contract of January, 1920, were not used for sowing in the spring of that year, as it was undoubtedly intended, but were kept stored in the *Canning Company's* possession all of that summer, the fall, and winter. When, by stipulation of the parties and under the approval of the court, the arrangement was made just prior to the sowing season in 1921 for the purchase of the Perfection and Alaska peas for $8,000, a substantial reduction from the original price, both such lots of seed peas were in the actual possession of the receiver with full opportunity for examination and test either by himself or by the State Department of Agriculture. The testimony discloses that shortly after the original arrival of the Perfection peas at Iron Ridge, a test was made on behalf of the *Canning Company,* resulting in a showing that was held by the trial court to be a substantial compliance with the germinating test.

Under the stipulation, pursuant to the confirmation of which by the court the final deal was made, there was no warranty or representation on the part of *Keeney* as to their then condition, if such transaction be considered as a new and independent sale. If, however, it be considered, as it more properly can be, as a mere modification of the original contract, to meet the then present situation of the insolvency of the corporation and the necessity confronting the receiver

in arranging for the operating of the plant during the coming canning season in order to better preserve its assets, then no additional warranty or guaranty could be implied as against *Keeney,* who was constantly and consistently asserting his rights under the contract of January, 1920. By that contract the guaranty as to the germinating powers was limited to the time of delivery and not as to a period long subsequent thereto and during which period, under the uncontradicted testimony, there was possibility for deterioration and lessening of the germinating power, but which deterioration, if any, could have been ascertained by the receiver.

An examination of the testimony satisfies us that the court was amply justified in setting aside and disregarding the findings by the jury as pure surmise and substituting his own findings and conclusions to the effect that the shortage in the crop grown in 1921 from these seeds could not be and is not attributable to any breach of warranty on the seller's part in the original contract.

A controlling fact, however, sufficient to dispose of the case, is presented by the fact that the receiver gave no notice to the seller of any possible breach of contract on his part until by letter of July 6th, received by the seller on the 10th, and after the harvesting was practically at an end, rendering it impossible for the seller then to have an opportunity to learn himself or through others and from an examination of the actual situation. To give such an opportunity is the purpose of such notice required by statute.

The receiver supervised the planting either personally, having had considerable experience in the pea-canning industry, or by former employees of the *Canning Company* retained in service. The planting of the peas commenced April 28th and ended May 29th. After the planting that season such peas came up in from ten to fourteen days. It was the plain duty of the receiver himself or through his

employees, if anticipating or having good reason to antici-
pate any breach in the germinating qualities of the seed peas
so recently purchased, to ascertain that fact promptly and
then promptly notify the seller.    For a jury to return a
finding, as they did, that under the circumstances the earliest
date at which such receiver ought to have discovered that the
seed peas were not fit for reproduction was July 5th rather
than May 15th as found by the court, is so clearly and
obviously an answer based upon prejudice or bias that the
court was required to and properly did entirely disregard it.
His conclusion, therefore, on this branch of the case, namely,
that the receiver had ample opportunity to discover, could
have and should have discovered, any possible defect in the
germinating power of the seed peas involved long before
June 1st, is ample warrant for the disposition that was made
below on this feature of the case.

We deem it unnecessary to discuss more in detail the testi-
mony or the various alleged errors.    We are satisfied that
upon the merits the case was properly disposed of by the
trial court.

*By the Court.*—Judgment affirmed.


The appellants moved for a rehearing.

In support of the motion there was a brief by *Lueck,
Clark & Lueck* of Beaver Dam, attorneys, and *Harry L.
Butler* of Madison, of counsel.

In opposition thereto there was a brief by *Johns & Flana-
gan* of Randolph, attorneys, and *Grady, Farnsworth &
Walker* of Portage, of counsel.

The motion was denied, with $25 costs, on April 7, 1925.