IN RE LIQUIDATION OF ACME BRASS & METAL WORKS: CARY MANUFACTURING COMPANY and another, Appellants, vs. POMMER and others, Respondents.

*March 11—May 25, 1937.*

For the appellants there were briefs by *Edward J. Hart* of Waupaca, attorney for the Cary Manufacturing Company, and *Francis C. Cary, pro se,* and *George B. Skogmo*

and *Louis S. Wiener,* both of Milwaukee, of counsel, and oral argument by *Mr. Wiener, Mr. Skogmo,* and *Mr. Hart.*

For the respondents there were briefs by *Lloyd D. Smith* of Waupaca, attorney, and *Benton, Bosser, Becker & Parnell* of Appleton of counsel, and oral argument by *Mr. Smith* and *Mr. A. W. Parnell.*

The following opinion was filed April 7, 1937:

FOWLER, J.   (1) The claim of the plaintiffs, being filed in proceedings for the winding up of the affairs of a corporation, is considered as in equity, triable to the court without a jury.   *Harrigan v. Gilchrist,* 121 Wis. 127, 282, 99 N. W. 909; *Keeney v. Clark,* 186 Wis. 499, 508, 202 N. W. 466. Being so triable the verdict of the jury was advisory only. The court therefore might properly refuse to accept the findings of the jury, and make its own findings of fact and render judgment thereon.   *Charles Baumbach Co. v. Hobkirk,* 104 Wis. 488, 80 N. W. 740; *Gavahan v. Shorewood,* 200 Wis. 429, 228 N. W. 497; *McIntyre v. Carroll,* 193 Wis. 382, 388, 214 N. W. 366.   The court having done this, we cannot disturb its judgment unless it is contrary to the great weight and clear preponderance of the evidence.   The findings of fact made by the court are twenty-four in number. They cover not only the ultimate facts at issue in actions for fraud, but include findings of a great number of evidentiary facts.   They show a full understanding and careful consideration of the evidence and are clearly supported by it. The judgment must therefore be affirmed.   Although the above covers all that is necessary to disposition of the case, we conclude to treat briefly other matters of practice raised by the plaintiffs on the assumption that the action is one at law.

(2)  If a party is entitled to a jury trial as matter of right, he waives a jury trial by going to trial to the court without demanding it.   The record discloses no demand for a jury

trial until after the court had refused to accept the findings of the jury. *Charles Baumbach Co. v. Hobkirk, supra; Gavahan v. Shorewood, supra.*

(3) Aside from waiver, the plaintiffs were estopped from demanding a jury trial by the change of venue made after the plaintiffs left the case on the court calendar and thereby indicated assent to its trial to the court. The defendants, had they known a jury trial would be demanded, would not have assented to the change of venue. They would have preferred a trial in the county of their residence, where they were well known, and apparently held in high esteem by the public, while it was immaterial where the trial was had in case of trial to the court without a jury. It was thus of advantage to the defendants to have the trial in Waupaca county if a jury trial was to be had. Estoppel by conduct of a party arises when his conduct has resulted in disadvantage to the opposite party or in advantage to himself. Defendants' counsel were justified in assuming that a jury trial would not be demanded, both because the proceeding in which the claim was filed was in equity, and because the prayer of the claim was for equitable relief. While it is true that the form of the prayer does not alone determine whether a case is at law or in equity, in the instant case its effect was to induce belief of defendants' counsel that the plaintiffs considered the case as in equity and that a jury trial was not expected.

(4) The plaintiffs urge that in actions at law "where the falsity of the representation is not obvious, the law 'does not require that a purchaser shall meet every positive statement with incredulity and must search to ascertain whether it is false,'" citing *Jacobsen v. Whitely,* 138 Wis. 434, 436, 437, 120 N. W. 285, and that the jury's findings that the plaintiffs had no right to rely on the truth of the representations involved in questions (a) and (b) should have been set aside by the court. The rule above quoted may be conceded. The

plaintiffs have not brought themselves within it for the reason that the jury might properly infer from the evidence that the falsity of the representations was "obvious." Negotiations for the purchase of the property involved were initiated by Mr. Cary. These negotiations resulted in the defendants granting an option to Mr. Cary to purchase within sixty days. He assigned the option to the plaintiff corporation, which he organized for the purpose of effecting purchase of the property by it. Shortly before the option expired, it was accepted by the corporation, and the land contract referred to in the statement of facts preceding the opinion was executed. Such statements as were made by the defendants relating to the representations covered by questions (a) and (b), if any were made, except as to the possibility of a sixteen-foot head, hereinafter explained, were made before or at the time of the granting of the option. Mr. Cary, and with him several persons in his employ, made many visits to and extensive inspections of the property during the existence of the option. These were manifestly made to determine whether the option should be accepted. This involved inquiry or examination to determine whether such representations as had been made concerning the property were true. At the time the option was signed the defendants gave to Mr. Cary a detailed report of a competent engineer who had inspected the property. Mr. Cary had this report. It gave "the average horsepower that may be obtained at this site" as one hundred six theoretical or eighty-five practical, "provided a water wheel having capacity of one hundred nine practical horsepower is installed." This report also gave the head of the water power as eleven feet. A mere view of the situation disclosed that raising the head to sixteen feet would inundate a road and a bridge, and manifestly acquisition of right from landowners to flood their lands does not cover rights against the public to inundate roads and bridges. The claim respecting a sixteen-foot head is

based upon a conclusion of two engineering students who investigated the water power and its possibilities as basis for their graduating theses. They sent to the defendants on August 8th, nearly five weeks after the option was executed, a summary of their conclusions. One of them was that "it was found that the dam could be raised six feet without involving a great expenditure of money for additional flowage rights." This was notice to all that read it that flowage rights for a raising of the dam had not been procured. This summary was given to Mr. Cary about three weeks before the option was accepted. Mr. Cary was at the time conducting an extensive manufacturing business. He was a lawyer, and therefore presumed to know something about the duty of a buyer to use such opportunity, intelligence, and information as he actually possesses to look out for himself. As to a buyer's duty in this respect, see *Farr v. Peterson,* 91 Wis. 182, 64 N. W. 863; *Bostwick v. Mutual Life Ins. Co.* 116 Wis. 392, 89 N. W. 538, 92 N. W. 246; *Farmers' Co-operative P. Co. v. Boyd,* 175 Wis. 544, 185 N. W. 234; *Plantikow v. Wolk,* 190 Wis. 218, 208 N. W. 922; *Jesse v. Tinkham,* 207 Wis. 49, 239 N. W. 455. Mr. Cary was also a businessman of large experience, and a graduate civil engineer, with long and large experience in engineering work, some of it in connection with water power. This is enough to indicate justification for the jury's finding that the plaintiff corporation, which for all practical purposes is Mr. Cary himself, ought not to have relied on the representations involved in the questions (a) and (b) of the verdict, even if they were in fact made.

*By the Court.*—The judgment of the circuit court is affirmed.

A motion for a rehearing was denied, with $25 costs, on May 25, 1937.