W. H. Hobbs Supply Company, Respondent, vs. Ernst, Appellant.

*May 3—June 1, 1955.*

For the appellant there were briefs by *Hale, Skemp, Nietsch, Hanson & Schnurrer,* and oral argument by *Thomas H. Skemp* and *Joseph D. Becker,* all of La Crosse.

For the respondent there was a brief by *Johns, Roraff, Pappas & Flaherty* of La Crosse, and oral argument by *Robert D. Johns.*

Gehl, J. The substance of the findings is as follows: For some time prior to July 1, 1953, defendant, David Ernst, had been in the employ of one Vern Dale, the operator of a business known as Outer's Laboratories near Onalaska, Wisconsin. As a side line he did some repairing, altering, and remodeling of sporting goods in a small store in the city of Onalaska. The plaintiff, W. H. Hobbs Supply Company, a corporation, was engaged in the business of the sale, among other things, of sporting goods, particularly guns, ammunition, and related items. On or about July 1, 1953, the defendant stopped at the plaintiff's place of business where he met Henry Strand, who was then in the process of taking over the functions of credit manager of the corporation. He was still under the supervision of one James Depe who had been doing double duty as a salesman and credit manager and was about to take over the function of supervisor of sales.

The defendant told Strand that he was interested in the plaintiff's line and described his own business establishment. He told Strand of his plan to extend his business, and that he had the financial backing of one Vern Dale who had been doing business with the plaintiff corporation by way of supplying it with some of the products which he manufactured at Outer's Laboratories. Thereafter Strand investigated as to Vern Dale and determined that he was financially responsible. On the basis of the representation made by the defendant, plaintiff extended credit to him.

On July 24, 1953, Sam Sabaska and Birdell Peterson, representatives of plaintiff, called at defendant's place of business. After some general discussion the three men went to Outer's Laboratories for the purpose of observing the establishment. On the way to the laboratories defendant stated two or three times to the two men that Vern Dale was backing him. Sabaska and Peterson were informed by defendant that he had no funds of his own. On the return from Outer's Laboratories defendant again told the two men that he had the backing of Vern Dale and that he would furnish letters of recommendation from various people with whom he had been doing business. On the next day defendant went to the plant of plaintiff company and delivered there letters from three businessmen. The letters were given to Mr. Strand and at that time defendant met Mr. Depe. In a discussion between defendant and Mr. Depe and Mr. Strand defendant again said that he had the financial backing of Vern Dale. Strand and Depe concluded that the letters disclosed nothing more than that defendant was indebted to various people and they then decided to extend credit to the defendant upon his representation that he had the financial backing of Vern Dale. Credit was extended to defendant but the amount thereof did not come to the attention of Mr. Depe until it had reached the amount of $4,726.36, no payment having been made thereon.

Depe became alarmed at the size of the account and called Vern Dale on the telephone on or about August 10, 1953, to inquire whether he was actually backing the defendant. Depe then became aware of the fact that there was in fact no financial backing by Vern Dale. The corporation then decided to extend additional credit to the defendant in an effort, so its officers testified, to enable him to continue his business and to see if the matter could be worked out. In August defendant paid $250, in September $250, and in October $150 upon the account. The effort to work the matter out was unsuccessful and attachment followed.

Upon the foregoing findings the court concluded that the defendant fraudulently incurred the obligation; that the attachment is based upon statutory grounds, and is valid, and that the plaintiff is entitled to recover costs of trial of the traverse.

Defendant does not challenge the findings as being insufficient to support the conclusions of law. His attack is made upon the ground that plaintiff has not met the burden of proving the fraud by clear and satisfactory evidence. It is our function to determine whether defendant has established that the findings are contrary to the great weight and clear preponderance of the evidence; specifically, whether plaintiff has failed by the degree of proof required to establish that (1) defendant made a statement of fact which was untrue; (2) it was made with intent to defraud and for the purpose of inducing plaintiff to act upon it; and (3) that plaintiff did in fact rely upon it and was induced thereby to act to his damage. *Larson v. Splett,* 267 Wis. 473, 66 N. W. (2d) 181.

(1) Defendant concedes that the finding that he had stated to plaintiff's representatives "that he had the financial backing of Vern Dale" finds support in the testimony. He refers, however, to the fact that in both affidavits supporting

the writ it is alleged that defendant stated to plaintiff's representatives that Dale *would* back him up financially, and contends that no assertion of a present or pre-existing fact was thereby made; that the statement must be construed as a representation of something to happen in the future. If the statement had been made in respect to some act which defendant proposed doing in the future, the contention would have merit. It is not that kind of statement, however. It is a representation that Mr. Dale *had* agreed that he would give him financial support; it was a reference to a then existing agreement on the part of Dale to help defendant in the operation of his business. See *Weber v. Myhre,* 191 Wis. 263, 210 N. W. 832. Defendant admitted at the trial that no such agreement had been made by Dale.

(2) There can be no doubt that the court was fully warranted in finding that the statements were made with intent and for the purpose of inducing plaintiff to act upon them. They could have been made for no other purpose.

(3) It is contended that plaintiff should be denied recovery because it failed in its duty to investigate the truth of defendant's statement and that under the circumstances it was not justified in relying upon the statements made by him. We may not disturb the trial court's finding upon this question unless it is against the great weight and clear preponderance of the evidence. We believe that it is. It is true that ordinarily one to whom a positive, distinct, and definite representation has been made is entitled to rely on such representation and need not make further inquiry concerning the particular facts involved. It is just as true, however, that one may not under all circumstances blindly act on a statement in disregard of an opportunity to learn the truth when by the exercise of ordinary attention he would have learned it. *Plantikow v. Wolk,* 190 Wis. 218, 208 N. W. 922; *Acme Chair & M. C. Co. v. Northern C. Co.* 209 Wis. 8, 243 N. W. 415, 244 N. W. 582; *In re Acme Brass & Metal*

*Works*, 225 Wis. 74, 272 N. W. 356. There are certain undisputed facts which it appears to us called for a more careful investigation on the part of plaintiff and which demonstrate that by the exercise of ordinary attention plaintiff itself would have found and concluded that it had no right to rely upon the representation.

Plaintiff corporation owned and operated a substantial business, a business of sufficient size and consequence to require the employment of a credit manager. Dale was not a stranger to its officers, of whom on that account they might have hesitated to inquire as to the truth of defendant's representation. Plaintiff had been doing business with Dale. Its officers did not hesitate to inquire of him when defendant had received credit to the extent of $4,700.

Plaintiff's officers saw defendant's place of business, a small shop measuring 12 by 30 or 40 feet in area and for the rental of which he was paying only $10 per month. Defendant told plaintiff's representatives that he had no money with which to open up a business. Two of plaintiff's officers met Dale at his place of business after the representation had been made and visited with him thirty or forty minutes. No inquiry as to defendant's representation was made of Dale, although, as we have already pointed out, he and the plaintiff's employees were not strangers.

On the day of the visit with Dale, plaintiff's officers told defendant that on July 16th they had received an unfavorable report on defendant from Dun & Bradstreet. At that time they had extended no credit to defendant. In response defendant said he would provide letters from people with whom he had done business, and on the next day delivered to plaintiff four letters, upon none of which, the credit manager testified, would plaintiff have extended credit to defendant.

On August 10th, when defendant was owing approximately $4,700, plaintiff's credit manager called Mr. Dale on the telephone and inquired whether he had agreed to back de-

fendant. He was told that he had not so agreed. Despite that fact plaintiff continued to deliver merchandise to defendant and extended further credit. Plaintiff's officers were charged with the knowledge that Dale's promise, if it had been made, would have been worthless as an oral statement. It would seem that with the information they had as to defendant's unsatisfactory credit rating, plaintiff's officers should, in the exercise of just ordinary business sense, have made inquiry of Dale to ascertain, first, whether he had in fact undertaken to support defendant and, second, if he had, was the agreement represented by a writing.

The parties dealt with each other at arm's length. No fiduciary relationship existed between them. Defendant made no effort to divert plaintiff from any attempt it might have considered making to verify his statement. On the contrary, he took two of plaintiff's officers to Dale's place and brought about a visit with Dale and an opportunity for plaintiff's representatives to make the inquiry which they should have made. We consider that under the circumstances, and in view of these facts, none of which are in dispute, plaintiff had no right to rely upon the representation and therefore the traverse of the attachment should have been sustained. What is said in *Acme Chair & M. C. Co. v. Northern C. Co., supra* (p. 17), certainly is applicable here:

"It seems plain that, whether the representation in question was made, the defendant failed to exercise that care for its own protection which was easily within its power to exercise, and, under all the circumstances, it was not justified in relying upon such a representation, if made."

*By the Court.*—Judgment reversed. Cause remanded for further proceedings according to law.