KRAFT, Respondent, v. WODILL, Appellant.

*September 6—October 2, 1962.*

426

428

The cause was submitted for the appellant on the brief of *Swan, Strub & Woodworth,* and for the respondent on the brief of *Lueck & Skupniewitz,* all of Beaver Dam.

CURRIE, J.   We are satisfied on this appeal that defendant Wodill has not successfully attacked the trial court's

findings of fact with respect to the condition of the tavern fixtures which he purchased. The facts are clear that Kraft gave Wodill every opportunity to inspect. Wodill and three other adult members of his family visited the tavern in which the fixtures were located about two weeks before his purchase of the tavern business. Wodill failed to inspect the fixtures on that occasion. A casual inspection would have disclosed that they were secondhand and somewhat the worse for wear. Furthermore, Meisenberg testified that sometime before Wodill's purchase, he again came to the tavern and went down into the basement where the walk-in cooler was located. Ordinary inspection would have disclosed the true condition of these fixtures as the trial court pointed out in its findings. In this regard, we consider particularly apropos the following statement made by Mr. Justice GEHL, speaking for this court, in *W. H. Hobbs Supply Co. v. Ernst* (1955), 270 Wis. 166, 170, 70 N. W. (2d) 615:

"It is true that ordinarily one to whom a positive, distinct, and definite representation has been made is entitled to rely on such representation and need not make further inquiry concerning the particular facts involved. It is just as true, however, that one may not under all circumstances blindly act on a statement in disregard of an opportunity to learn the truth when by the exercise of ordinary attention he would have learned it. *Plantikow v. Wolk,* 190 Wis. 218, 208 N. W. 922; *Acme Chair & M. C. Co. v. Northern C. Co.* 209 Wis. 8, 243 N. W. 415, 244 N. W. 582; *In re Acme Brass & Metal Works,* 225 Wis. 74, 272 N. W. 356."

Even if we overlook Wodill's failure to examine the fixtures we are met with the trial court's finding that they worked properly and served the purpose for which they were installed. Thus plaintiff's representations, as to their condition, were substantially true, and the trial court so held.

Kraft's representation that the assets sold to Wodill were worth $5,500 presents a closer question. We are first confronted with the thorny question, When is a representation of value deemed in law a statement of fact as opposed to a mere expression of opinion, insufficient to support a cause of action for fraud and deceit? The most-satisfactory test was stated by Mr. Justice (later Chief Justice) ROSENBERRY in *Miranovitz v. Gee* (1916), 163 Wis. 246, 255, 157 N. W. 790, as follows:

"A study of the cases suggests the thought that, in the absence of an express intent to defraud, the determination of whether or not certain representations are statements of fact or of opinion depends upon whether or not the person to whom the representations are made may, under all the facts and circumstances of the case, including such person's capacity or want of capacity, rely upon them. Where the person to whom they are made may rely upon them they are held to be statements of fact; where the person to whom they are made may not rely upon them, without being guilty of a want of ordinary care and prudence, they are denominated opinions."

Kraft had operated taverns in three other localities before coming to Beaver Dam in 1952. By April, 1960, he had operated at least five taverns, two of which were in Beaver Dam. We may reasonably infer that he purchased tavern assets in connection with each of these five entries into the tavern business and sold tavern assets at three different times before coming to Beaver Dam. Thus his familiarity with the tavern business and the worth of such businesses was much superior to that of Wodill. Therefore we conclude that Kraft's statement, that the assets of the Peek-Inn tavern were worth $5,500, was a statement of fact, not one of opinion.

Wodill contends that the only assets he purchased from Kraft were the fixtures and inventory. He bases this contention on the following grounds: (1) The sales agreement

mentions no other assets; and (2) a Class "B" liquor license is not assignable. The great weight of the evidence, however, is to the effect that Wodill was buying a tavern business and not merely physical assets. For example, Wodill's testimony, regarding his first conversation with Kraft, included the following question and answer:

"*Q.* What was said? *A.* Well, he said he had a tavern to sell, and he said that me and my wife was out of work now, we would make a nice couple to run it, and it was worth $5,500, or more, and it was in perfect A–1 condition to go ahead with things."

Wodill also admitted that when he signed the sales agreement at Attorney Lueck's office he believed he would have the right to apply for a Class "B" liquor license. Furthermore, on May 3, 1960, Kraft noted the sale of "my tavern" and listed the address of the Peek-Inn tavern on a form issued by the Wisconsin department of taxation, in connection with the sale of the tavern's inventory of alcoholic beverages, and signed by both parties. The acts of the parties on April 25, 1960, afford further corroboration: Kraft helped Wodill take over the tavern lease, apply for a two months' liquor license covering the Peek-Inn premises, and secure telephone service and electricity for the premises.

The parol-evidence rule would not bar evidence that Kraft gave additional consideration, besides the transfer of fixtures and inventory, for the $5,500 purchase price. *Morn v. Schalk* (1961), 14 Wis. (2d) 307, 314, 111 N. W. (2d) 80. This additional consideration was Kraft's surrender of both his Class "B" liquor license, two months before it expired, and his lease so as to enable Wodill to be substituted as a liquor licensee and the lessee of the premises. The evidence discloses that the maximum number of Class "B" licenses, authorized by the Beaver Dam common council, were outstanding on April 25, 1960. Therefore, a person, such as Wodill, could not enter the tavern business

in that city without arranging for a licensee, such as Kraft, to surrender his license. Thus, while Kraft's Class "B" license was not assignable, his surrender thereof in favor of Wodill was a valuable consideration to Wodill for which Kraft was entitled to be paid.

This brings us to the final question of whether the trial court's findings of fact are against the great weight and clear preponderance of the evidence. The trial court found that the tavern business was historically worth between $5,000 and $5,500, and that Kraft did not misrepresent its value. Kraft paid the former owner of the Peek-Inn tavern $4,000 for the business in 1958. Kraft testified that he spent approximately $1,500 thereafter to improve and redecorate the premises and add to the fixtures. His income-tax returns indicate that this figure was $1,719. The city assessor testified that, using a basis of 54 percent of true value, he assessed the fixtures at $700 for the year 1958. While this was a doomage assessment, it was computed by taking the value of the front and back bars, as if new, and then depreciating them. On the basis of this assessment, the actual value of the fixtures at that time was approximately $1,296. Kraft testified that the market value of the inventory transferred to Wodill was slightly in excess of $200.

One of Wodill's witnesses put the market value of the fixtures and inventory at $1,070. Two witnesses testified concerning the market value of Class "B" liquor licenses in Beaver Dam. One placed the value at $3,500 and the other at only $500. Wodill's 1960 income-tax return discloses that he had a net income of $4,263.98 from the tavern during the last eight months of that year. On trial he admitted that he was making a living by operating the tavern. Thus there is competent evidence to support a finding that the fixtures and inventory were worth approximately $1,500 and Kraft's surrendering his license in Wodill's favor was worth $3,500, making a total value of $5,000. Moreover,

Kraft's testimony showing that his investment in the business was about $5,500 or $5,719 is also competent evidence of value.

It is our considered judgment that an action for fraud should not be grounded upon a representation of value which includes intangible assets, such as the surrender of a liquor license, if the evidence shows that the representation is substantially true—absent proof of intent to defraud or mislead on the part of the person making the representation. We deem proof of an actual value of $5,000 sufficient to render Kraft's representation of the value as $5,500 substantially true. Therefore, we conclude that the trial court's findings of fact are not against the great weight and clear preponderance of the evidence.

*By the Court.*—Judgment affirmed.