SIPES, Respondent, vs. DECKER, imp., Appellant.

*March 16 — April 4, 1899.*

*Equity: Parol agreement to convey land: Fraud.*

1. Before a court of equity will enforce an alleged parol agreement to convey land there must be shown a specific agreement to convey, based upon a good consideration. A mere intention, even though repeatedly asserted and partly executed, is not enough.

2. In an action to foreclose a mortgage given by T. on lands purchased by him from plaintiff's husband, since deceased, a daughter of the grantor answered by way of counterclaim that while residing in Kansas she had been induced by her father to move to Wisconsin and reside with him by promises that if she would do so she should have the lands in question; that her father had then given her the lands upon the condition that she should give him one third of the crops raised thereon during his lifetime; that she had accepted the gift and entered into possession of the premises, to the knowledge of the plaintiff, and was still in possession thereof; that while ill her father had caused a deed of said lands to her to be prepared, but was induced by the fraud and undue influence of the plaintiff not to execute it; and that while feeble in mind and body he had been induced, by like fraud and undue influence, to convey the lands to T. and take back the note and mortgage in plaintiff's name for a part of the purchase money. *Held*, that no legal or equitable right of the daughter in the lands was shown which would warrant the interposition of a court of equity.

APPEAL from a judgment of the circuit court for Waupaca county: CHAS. M. WEBB, Circuit Judge. *Affirmed.*

For the appellant there was a brief by *Lord & Wheeler*, and oral argument by *F. F. Wheeler*.

For the respondent there was a brief by *Goodrick & Goodrick* and *Connell & Hart*, and oral argument by *E. J. Goodrick*.

CASSODAY, C. J.　This is an action to foreclose two notes and a mortgage upon real estate for the aggregate amount of $1,788, executed July 19, 1894, by the defendants Ernestine and Warren C. Topping to the plaintiff, and recorded July 20, 1894. The complaint is in the usual form, and the other defendants are joined as subsequent claimants. The mortgagors made no answer, but the defendant *Elvina Decker* separately answered and admitted nearly all the allegations of the complaint, except that she denies that her interest in the mortgaged premises is subsequent to the lien of the mortgage; and for an equitable counterclaim she therein alleges, in effect, that December 20, 1851, John Sipes, who was the husband of the plaintiff at the time of the execution of the notes and mortgage, married one Louisa M. Watson; that one George G. Sipes and the defendant *Elvina* were the lawful issue of such marriage; that John Sipes and Louisa lived and cohabited together from the time of their marriage until 1867, when Louisa, mother of George and *Elvina*, obtained a divorce, which was duly rendered December 9, 1867; that July 31, 1877, John Sipes married the plaintiff, who was at that time a widow and had two children; that John at that time owned the mortgaged premises described; that from 1885 to 1892 *Elvina* resided in Kansas; that her father visited her, and urged her to come to Waupaca county, and said that if she would she should have the lands in question; that he wrote her, urging her to come and reside upon such lands, and stated that her husband could carry on the meat

business; that in pursuance of such statements and solicitations she complied with such request, and abandoned her home in Kansas, and came to Waupaca county November 27, 1892, when her father gave to her all of the lands described, upon the condition that she would give him one third of the crops raised thereon during his lifetime; that *Elvina* accepted such gift, and entered into the actual and peaceable possession thereof, and continued in such possession thereafter, and that the same was with the knowledge of the plaintiff; that November 27, 1893, her father was taken ill, and remained feeble and in poor health, off and on, from that time until his death; that March 22, 1894, her father caused a deed of the lands from himself and his wife to her to be made out, but he was induced, by and through the cunning, artifice, deceit, and undue influence of the plaintiff, not to execute and deliver the same; that July 19, 1894, her father, while feeble in mind and body, and in fraud of her rights, and by cunning, artifice, deceit, fraud, and overpersuasion of the plaintiff, conveyed the land by warranty deed to the defendant Ernestine Topping in consideration of $2,200, and took back the notes and mortgage in the name of the plaintiff in part payment of the purchase price therefor, and that the same was done without the knowledge or consent of *Elvina;* that at the same time the plaintiff also procured the balance of the purchase price of the land, $412, for herself; that April 5, 1895, her father died, at the age of seventy-three; that her father had owned other real estate, of the value of $2,000, which he had conveyed to the plaintiff; that she had been informed and believed that during the time her father was ill, and up to the time of his death, the plaintiff said to him that *Elvina* had robbed him once and would again, that she had never done anything for him, and never would, and that she went off and left him with only a bed and a couple of quilts; that such several statements, if made, were false and untrue, and that she

loved and respected her father, and had done all she could to assist and comfort him.

The answer prayed judgment that the plaintiff take noth· ing by her action; that the real estate be adjudged to be the property of *Elvina*, or, if beyond the reach of the court, then that the notes and mortgage be surrendered up and turned over to the estate of John Sipes. The plaintiff replied to the equitable counterclaim by way of admissions and denials.

After the plaintiff had proved her case and rested, and a witness had been sworn on behalf of the defendant *Elvina*, the plaintiff objected to any evidence under the counterclaim, and the court sustained the objection on the ground that it did not state facts sufficient to constitute an equitable counterclaim. Thereupon, and upon appropriate findings of fact and conclusions of law establishing the plaintiff's claim as alleged in the complaint, judgment of foreclosure and sale was entered, and from that judgment the defendant *Elvina Decker* appeals.

The mortgagors held a warranty deed of the mortgaged premises, executed by the plaintiff and her husband. Their title to the land, subject to the mortgage, was not and could not be successfully questioned, upon the pleadings in this action. True, the appellant alleges that she was in possession when the deed was delivered and the mortgage given back, under a parol agreement to work the land on shares and give her father one third of the crops raised thereon; but her father had died several months prior to the commencement of the action, and hence such alleged parol agreement had terminated. There is nothing in the answer, if proved, which would justify a court in finding that the appellant's father had not fully performed all the promises he had made in respect to giving her the lands. The mere fact that he had stated to her and others that he intended to give her the lands, or that the lands should be hers when he got through

Sipes vs. Decker.

with the same, or that he caused a deed of the lands to be drawn, but which the plaintiff, through cunning, artifice, deceit, and undue influence induced him never to execute or deliver, is no ground for taking the notes and mortgage from the plaintiff and giving them to the appellant.or to the estate of John Sipes.

The theory of the appellant seems to be that the plaintiff took the notes and mortgage subject to a parol agreement of her husband to convey the lands to the appellant, and that the trial court, as a court of equity, should have enforced such parol agreement. But before a court of equity can thus decree there must be a specific agreement to convey, based upon a good consideration. The counterclaim fails to disclose such an agreement. A mere intention, repeatedly asserted and partially executed, is not enough. The appellant's father owned the land. He had the legal right to dispose of it as he saw fit, subject to his wife's dower and homestead rights. The counterclaim alleges no legal or equitable right in the appellant to the lands which would justify the court in setting aside the transaction. Counsel for the plaintiff refers to the statutes of frauds and decisions under them. Stats. 1898, secs. 2302, 2304, 2305. But it is unnecessary to resort to those statutes, or such decisions, in order to defeat the contentions of the appellant. The trial court was clearly right.

*By the Court.*— The judgment of the circuit court is affirmed.