MARSHALL & ILSLEY BANK, Administrator, and others, Appellants, vs. SCHUERBROCK and others, Respondents.

*December 8, 1927—March 6, 1928.*

*Specific performance: Oral contract to convey land: Part perform-ance: Necessity that purchaser assume possession: Degree of proof required: Certainty of contract: Evidence: Testimony opposed to common experience: Weight.*

1. The court may take an advisory verdict from the jury on an equitable issue, but such verdict is not conclusive on the court, which may set it aside or give judgment contrary to the ver-dict, if the evidence warrants such a judgment; and where the findings of the court on an equitable issue are made and are in conflict with the verdict, the findings supersede and set aside the verdict.   p. 209.

2. In this jurisdiction equity will not enforce specific performance of an oral agreement to convey land, although there has been part performance, unless the purchaser has been put in pos-session, except where the vendor's refusal to perform will work a fraud on the purchaser and the latter has no adequate remedy at law.   p. 210.

3. Where specific performance of an oral contract is sought, the contract must be fully made, completed in all its terms except the writing required by the statute of frauds.   It must also appear that the acts of alleged performance have been ob-viously and solely done in reliance upon and under the obliga-tion of an established parol contract.   p. 210.

4. Performance of services in reliance upon an oral contract to convey land does not constitute sufficient consideration to war-rant the intervention of a court of equity.   p. 211.

5. Not only must such a contract be complete, definite, and certain, but the facts relied upon to take the case out of the statute of frauds must be established by clear, satisfactory, and convinc-ing evidence.   p. 211.

6. In an ejectment action in which a defendant filed a counterclaim for specific performance of an alleged oral contract whereby defendant's deceased brother had agreed to convey a house in which he lived with defendant's family, the evidence is *held* not to establish by clear and satisfactory proof such open, notorious, and exclusive possession by defendant as was re-quired to show part performance so as to avoid the effect of the statute of frauds.   p. 214.

7. The promise of deceased to purchase a home for defendant at some future time in fulfilment of his obligations to her, nothing being specified as to the kind of home to be purchased, its location, value, or anything else, was too indefinite to form the basis of a claim to specific performance. p. 214.

8. A parol gift of land, in order to be effective and not be within the statute of frauds, must be accompanied by possession, and the person to whom it is made must have made improvements or have done some other acts in reliance upon the gift, and the situation must have been such that great injustice would be done to the donee if the title is not passed. p. 215.

9. Where the rental value of premises far exceeded the value of any improvements made and any board or other services rendered by the donee to the deceased donor, no injustice, fraud, or wrong would be worked as to the donee by reason of anything she did in reliance on the oral gift, and it could not be enforced under the statute of frauds. p. 215.

10. Testimony that deceased lived with defendant's family for thirty-five years, during which time he never contributed toward the support of the family or in any way compensated them, lacked the convincing power necessary to establish a part performance on the part of the defendant so as to avoid the effect of the statute of frauds. pp. 216, 217.

11. Courts are not bound by testimony which is opposed to the common knowledge and experience of mankind and contradicted by all the conceded facts in the case. p. 217.

12. In this case defendants are *held* not entitled to an accounting or an equitable lien on the premises for advances made by them on account of improvements on the premises or the payment of taxes, where the evidence did not establish part performance of the alleged oral contract sufficient to satisfy the statute of frauds, and did not show that defendants made sufficient improvements on the property to make the alleged parol gift effective. p. 218.

APPEAL from a judgment of the circuit court for Milwaukee county: OTTO H. BREIDENBACH, Circuit Judge. *Reversed.*

Ejectment. Counterclaim for specific performance. Frederick H. Bartels, deceased, was married to the plaintiff *Kate Bartels* at the city of Cincinnati, Ohio, on the 3d day of June, 1884. Bartels having become dissipated left Cincinnati in the early part of the year 1891, deserting his wife

and son, the plaintiff *Frederick J. Bartels,* who was then about four years of age. Thereafter Frederick H. Bartels never visited nor communicated with his wife or son nor contributed to the support of either of them. He came directly to the city of Milwaukee to the home of his sister, the defendant *Bertha Schuerbrock,* with whom he thereafter lived to the time of his death, May 29, 1926, except that for the greater part of the year 1909 he was employed as a traveling salesman and was therefore not at home. Within a few months after his arrival in Milwaukee the deceased secured employment in the wholesale and retail grocery house of the Steinmeyer Company and remained in such employment continuously for eighteen years. He then left and engaged in traveling during the year 1909, and in 1910 opened a retail grocery business of his own and conducted the business down to 1923, when he sold it to his nephew, Walter Schuerbrock, and retired.

The court found that from the year 1891 to the year 1904 the deceased spent his entire earnings and had nothing wherewith to pay the defendant *Bertha Schuerbrock* for her services in providing him with a home, furnishing him board and lodging, and mending his clothes; that "in the early part of the year 1904 Frederick H. Bartels began saving money, and many times and continually thereafter until the year 1920 orally contracted and agreed with and promised to defendant *Bertha Schuerbrock* that in consideration of her having provided him with a home and having furnished him with board and having washed and mended his clothes and having taken care of him and having treated him as a member of her family from the early part of 1891, and in consideration of her agreement to continue so doing in the future, he would buy her a house in the city of Milwaukee, Wisconsin, to pay her therefor, and in reliance upon such contract, promise, and agreement, and in consideration therefor, defendant *Bertha Schuerbrock* continued to provide him

with a home and furnish him with board, wash and mend his clothes, and treat him as a member of her family, until his 'death."

It appears without dispute that on March 6, 1920, the deceased purchased the premises in question located in the city of Milwaukee; that the title thereto was taken in the name of Frederick H. Bartels, the deceased, and continued in him uninterruptedly to the time of his death. It is the claim of the defendant *Bertha* that she at all times believed the premises in question belonged to her, expended the sum of $325 thereon for painting, decorating, laying concrete sidewalk, planting shrubbery, improving the plumbing and in making general repairs, and that by reason of such belief she caused the taxes to be paid thereon from the year 1920 up to and including the year 1925, in the amounts specified in the findings.

It was further claimed by the defendants and the court so found, that the deceased had "never paid any money or gave any property to defendant *Bertha Schuerbrock,* or in any way fulfilled his contract to pay her for having given him a home and having taken care of him from the year 1891 until May 29, 1926 (the date of his death), except that he purchased and gave to her the real estate and premises above described."

It was further claimed by the defendants and found by the court, that "in the year 1920, immediately after he bought the said real estate for defendant *Bertha Schuerbrock,* and many times and continually thereafter, until his death on May 29, 1926, Frederick H. Bartels orally contracted and agreed with and promised to defendant *Bertha Schuerbrock* that in consideration of her having provided him with a home and having taken care of him in the past, and in consideration of her agreement to continue so doing during the remainder of his life, as payment in addition to the purchase of the house for her he would leave her a part of the

money which he would have accumulated upon his death,"
and that in reliance thereon the defendant *Bertha Schuer-
brock* continued to provide him with a home, take care of
him and treat him as a member of her family until his death.

The court further found that the reasonable value of the
services rendered by *Bertha Schuerbrock* to the deceased
from the year 1891, excluding the year 1909, exceeded the
value of the real estate in question, the reasonable value of
such real estate being $12,000.

It appears that in November, 1906, about nineteen years
after her husband deserted her, the plaintiff *Kate Bartels,*
believing herself to be a widow, married one Ellsworth
Baker, who died June 28, 1919. The son, *Frederick J.
Bartels,* left school and became a wage earner at thirteen
years of age, finally removing to Cleveland, Ohio, where
he lived at the time of his father's death. Louis Schuer-
brock, the husband of *Bertha,* was employed for many years
in a store in Milwaukee. His salary at no time exceeded
$80 per month. The defendant Walter Schuerbrock was
the son of Louis and *Bertha,* first clerked in his uncle's
store, and in 1923 bought the store from his uncle, the
deceased. Adele Schuerbrock, a daughter of Louis and
*Bertha,* was a music teacher and is and has for many years
been employed in the Milwaukee public schools. Marie
Bartels was a sister of the deceased and *Bertha Schuerbrock*
and lived in the Schuerbrock home since 1893.

Upon the death of Frederick H. Bartels letters of adminis-
tration were granted to the plaintiff *Marshall & Ilsley Bank;*
an inventory of the assets of the deceased Frederick H.
Bartels disclosed an estate of approximately $30,000 includ-
ing the house and lot in question. On the 27th day of
November, 1926, the administrator of the estate of the de-
ceased, the widow *Kate Bartels,* and the son *Frederick J.
Bartels* commenced this action in ejectment against *Bertha
Schuerbrock,* sister of the deceased, Louis Schuerbrock,

*Bertha's* husband, Adele Schuerbrock and Walter Schuer-brock, their children, and Marie Bartels, the sister. There-upon the defendant *Bertha Schuerbrock* answered the complaint and claimed the right to have the oral agreement between her and the deceased specifically performed, and asked to have the title to said real estate quieted in her as against the plaintiffs and all persons claiming under them, and in the alternative, if specific performance be denied, that she be awarded an equitable lien for improvements and taxes. The other defendants answered. There was a reply to the counterclaim, and upon the equitable issue made by the reply a trial was had. The court submitted two questions to the jury:

"(1) Did the decedent, Frederick H. Bartels, say to the defendant *Bertha Schuerbrock,* at the time of the purchase of the premises in question, that they were hers in full or in part payment for services performed in keeping him and to be performed in keeping him during the remainder of his life? *A.* Yes." (Two jurors dissenting.)

"(2) Did the decedent, Frederick H. Bartels, deliver the possession of the premises in question to the defendant *Bertha Schuerbrock* in March or April, 1920? *A.* Yes." (One juror dissenting.)

The verdict was returned April 15, 1927. Thereupon the trial court adopted the findings proposed by the defendants, in which the material facts were found as already stated and other findings made, and upon which judgment against the plaintiffs and in favor of *Bertha Schuerbrock* was rendered, from which judgment the plaintiffs appeal.

For the appellants there was a brief by *Lines, Spooner & Quarles,* attorneys, and *James Quarles* and *James T. Guy,* of counsel, all of Milwaukee, and oral argument by *Mr. James Quarles* and *Mr. Guy.*

For the respondents there was a brief by *Slensby & Zaidins* and *Glicksman & Gold,* attorneys, and *Morris*

*Karon,* of counsel, all of Milwaukee, and oral argument by *Mr. Karon, Mr. Walter L. Gold,* and *Mr. Leo W. Slensby.*

The following opinion was filed January 10, 1928:

ROSENBERRY, J. There are one or two preliminary questions which must be disposed of before proceeding to the case upon its merits. It is first argued that the court was in error in taking the advisory verdict from the jury. This practice is so well established that we shall do no more than to refer to some of the cases. *Neff v. Barber,* 165 Wis. 503, 162 N. W. 667; *Callanan v. Judd,* 23 Wis. 343. However, such verdicts are merely advisory and are not conclusive upon the court. The court may set them aside or give judgment contrary to the verdict if the evidence warrants such a judgment. *Magoon v. Reber,* 76 Wis. 392, 45 N. W. 112; *Hennig v. Iron Ridge C. Co.* 186 Wis. 499, 202 N. W. 466.

Where findings are made and the findings conflict with the verdict, the findings supersede and set aside the verdict. *Gersich v. Starich,* 177 Wis. 507, 188 N. W. 492.

A brief reference to applicable legal principles will be helpful in a solution of the questions presented by the record. Except as the contract being an oral one is taken out of the statute of frauds by so-called part performance, it is void and ineffectual for any purpose. As to what constitutes sufficient part performance to take an oral contract to convey land out of the statute of frauds there is great conflict in the authorities. In England it is held that possession alone is sufficient. It is so held in some states. Taking possession of the purchased premises with the consent of the vendor and payment of the whole or a considerable portion of the purchase price is generally considered sufficient part performance. For a review and classification of the cases by states see Pomeroy on Specific Performance (3d ed.) § 115 *et seq.* and notes.

In Wisconsin the general rule is that equity will not en-
force specific performance of an oral agreement to convey
land although there has been part performance by the pur-
chaser unless the purchaser has been put in possession, except
where the vendor's refusal to perform will work a fraud
upon the purchaser and the purchaser has no adequate rem-
edy at law. *Henrikson v. Henrikson,* 143 Wis. 314, 127
N. W. 962; *Papenthien v. Coerper,* 184 Wis. 156, 198 N. W.
391; *Krueger v. Groth,* 190 Wis. 387, 209 N. W. 772.

There is no evidence that a conveyance was ever demanded
by the defendant *Bertha Schuerbrock* or any evidence that
the deceased ever declined in any way to convey. The rec-
ord is barren upon that subject. In order to entitle the de-
fendant *Bertha* to specific performance in this case there
must have been part payment coupled with possession.
*Scheuer v. Cochem,* 126 Wis. 209, 105 N. W. 573.

It is also well established that where specific enforcement
of a parol contract is sought, the contract must be fully made,
completed in all its terms except the writing required by the
statute. *J. L. Gates L. Co. v. Ostrander,* 124 Wis. 287, 102
N. W. 558; *Bowen v. Warner,* 1 Pin. 600; *Blanchard v.
McDougal,* 6 Wis. 167; *Eckel v. Bostwick,* 88 Wis. 493, 60
N. W. 784.

Likewise it must appear that the acts of alleged perform-
ance must be obviously and solely done in reliance upon and
under the obligation of an established parol contract. *Park
v. M., St. P. & S. S. M. R. Co.* 114 Wis. 347, 89 N. W.
532; *Roberts v. Templeton,* 48 Oreg. 65, 80 Pac. 481, 3 L.
R. A. n. s. 790, and note.

It is well established in this state that an oral agreement
to devise lands is not taken out of the statute by the per-
formance of services in reliance upon it, although they be
of a personal nature. *Rodman v. Rodman,* 112 Wis. 378,
88 N. W. 218, and cases cited.

Upon principle the same rule must apply to a contract to

convey, and such is the great weight of authority except in those cases where a denial of the right to specific performance would operate as a hardship and fraud upon the party claiming the right. 5 Pomeroy, Eq. Jur. (2d ed.) p. 5022, § 2248.

This court recognized that there is a division of authority, and in *Rodman v. Rodman,* 112 Wis. 378, 88 N. W. 218, deliberately adopted the rule that performance of services in reliance upon the oral agreement does not constitute a sufficient consideration to warrant the intervention of a court of equity. *Grindling v. Reyhl,* 149 Mich. 641, 113 N. W. 290, 15 L. R. A. N. s. 466. Not only must the contract be complete, definite, and certain, but the facts relied upon to take the case out of the statute must be established by clear, satisfactory, and convincing evidence. *Hibbert v. Mackinnon* (corporate stock), 79 Wis. 673, 49 N. W. 21; *Hadfield v. Skelton* (land), 69 Wis. 460, 34 N. W. 397.

In *McKee v. Higbee,* 180 Mo. 263, 298, 79 S. W. 407, the reasons for the rule are stated at some length and a number of cases cited and reviewed. The following language is quoted with approval from *Kinney v. Murray,* 170 Mo. 674, 701, 71 S. W. 197:

"When, as in this case, and in consonance with this doctrine, a court of equity is called upon to establish and enforce a contract of this character [parol contract within the statute] in the teeth of the statute of wills, and of the statute of frauds and perjuries, and to set aside the disposition of valuable property made in conformity with the requirements of those statutes, there is devolved upon the chancellor the gravest responsibility, perhaps, that ever attaches to his high office. And nothing short of the inherent justice of the claim, supported by evidence that can be relied upon with the utmost confidence, proving the existence of the contract, its terms and conditions and a substantial and meritorious compliance therewith, with such certainty and definiteness as to leave no room for reasonable doubt, can ever justify the exercise of such an extraordinary prerogative."

Wisconsin has not adopted the rule that part performance must be established beyond a reasonable doubt, but the cases are cited to show that the rule adopted here being less stringent than in many jurisdictions, both upon reason and authority it ought not to be further relaxed. 5 Wigmore, Evidence, p. 474, § 2498; 5 Pomeroy, Eq. Jur. (2d ed.) p. 5032, § 2252.

With these legal principles in mind we shall first consider the proof as to the possession relied upon as part performance.  For twenty-nine years prior to the purchase of the premises in March, 1920, the deceased had been a member of the Schuerbrock family.  He had moved with them to the various places which they had occupied, had always sat at the table, lived in the family living room, had a bedroom, and in all other respects was treated as a member of the family. Upon the purchase of the premises in question in 1920 the entire family moved into the premises and there occupied them in exactly the same way that they had occupied the houses in which they had previously lived.  The defendant *Bertha Schuerbrock* knew at the time of the purchase or shortly thereafter that the title to the premises had been taken in the name of the deceased; that the premises were assessed in his name and were insured in his name, and while she made some minor improvements such as the building of a small sidewalk, setting out of some shrubbery, repair of plumbing, and matters of that kind, the defendant *Bertha* in no way altered her position or did anything in the way of making improvements which would warrant a claim that she will be defrauded or any injustice done her if specific performance be denied.  The rental value of the premises, $75 a month, in any one year far exceeded the value of all improvements put upon the premises by her during the six years.  There is nothing to show any change in the relation of the parties except casual statements to the effect that the deceased considered the house to belong to his sister *Bertha,* that it was her home, and declarations of like character, which were

quite as consistent with their joint occupancy of the premises as a home for the entire family, including the deceased, as with any intention on his part to vest her with an exclusive possession. It is clear from the authorities that possession must be open, exclusive, notorious, and referable solely to the contract, and this fact, as well as other facts relied upon to constitute part performance, must be established by clear and satisfactory evidence. *Price v. Lloyd,* 31 Utah, 86, 86 Pac. 767, 8 L. R. A. N. s. 870, and note; 25 Ruling Case Law, p. 262, § 63; *Scheuer v. Cochem,* 126 Wis. 209, 105 N. W. 573.

In *Rodman v. Rodman,* 112 Wis. 378, 88 N. W. 218, it was held that where the promisor under a void oral contract to convey was in possession of the premises and the promisee was also put in possession, the possession of the promisee was subordinate to that of the holder of the legal title. See, also, *Perkins v. Perkins,* 173 Wis. 421, 180 N. W. 334, 181 N. W. 812. It is not necessary to say that the possession of a true owner might not in some way be made subordinate to that of a claimant under an oral contract, but it is considered that evidence consisting of assertions made by the deceased in the course of casual conversation, or declarations made by him to the claimant at or about the time the premises were purchased, where the situation of the parties remained unchanged, is insufficient for that purpose.

It is argued that the fact that the defendant *Bertha* and her family occupied the greater part of the premises and the deceased confined himself principally to the occupancy of a room is sufficient evidence to sustain the finding that the defendant *Bertha* had the exclusive possession. The evidence establishes beyond controversy that the deceased occupied the premises in common with other members of the family. He was not required to confine himself to the room in which he slept, but ate at the table, lived in the living room, and in all other respects conducted himself as a member of the family and not as a roomer and boarder. The defendant

*Bertha* managed the household affairs as she always had done.

If the evidence offered by the defendant is true, the deceased had for nearly thirty years been promising to buy the defendant *Bertha* a home, yet when he did buy a house suitable for a home he took the title in his own name, not by mistake but deliberately to the knowledge of all parties. In the circumstances in which he was situated he took all the possession of the premises that he would naturally take. His conduct was perfectly consistent with his desire to purchase a house in which he and his sister's family might make their home as it had been made in previous houses occupied by them. The evidence falls far short of establishing by clear and satisfactory proof such open, notorious, and exclusive possession as is required to show part performance so as to avoid the effect of the statute of frauds.

It is also considered that the contract to convey or to purchase a home for the defendant *Bertha* is not established with that definiteness and certainty necessary to entitle the defendant *Bertha* to a decree of specific performance. The promise of the deceased to purchase a home at some future time in fulfilment of his obligations to her, nothing being specified as to the kind of a home to be purchased, its location, value, or anything else, is too indefinite and hazy to form the basis of a claim to specific performance. *Sipes v. Decker,* 102 Wis. 588, 78 N. W. 769. In addition to that, the fact that in the face of all the circumstances he took the title in his own name to the knowledge of the defendant *Bertha,* without any protest on her part or claim that the transaction should have been otherwise than it was, contradicts in the most unequivocal manner the claim that the premises were to be hers, and indicates an acquiescence on her part in the provision that her brother had made for her, which was apparently that he and the Schuerbrock family occupy the premises together as they had their previous home. The case is argued here as if evidence sufficient to rebut any

possible presumption that services rendered by the defendant *Bertha* might have been gratuitous is sufficient to form a basis for specific performance. As already indicated, the contract must be definite, certain, and be established by proof that is clear, satisfactory, and unequivocal. In this case the terms of the contract are indefinite and uncertain and rest upon doubtful and unsatisfactory proof.

Some effort is made to sustain the finding on the theory that the deceased made a parol gift of the premises to the defendant *Bertha*. A parol gift, in order to be effective and not be within the statute, must be accompanied by possession, and the person to whom it is made must have made improvements or have done some other acts in reliance upon the gift, and the situation must be such that great injustice would be done the donee if the title is not passed. *Hawkes v. Slight,* 110 Wis. 125, 85 N. W. 721. No such circumstances appear in this case. The rental value of the premises was fixed by competent witnesses at $75 per month, which far exceeded the value of any improvements made upon the premises and any board or other services rendered by the defendant *Bertha* to the deceased. *Bevington v. Bevington,* 133 Iowa, 351, 110 N. W. 840, 9 L. R. A. n. s. 508, note, and cases cited; 12 Ruling Case Law, p. 939, § 16; *Ellis v. Cary,* 74 Wis. 176, 42 N. W. 252. No injustice, fraud, or wrong will be worked as to the defendant *Bertha* by reason of anything that she did in reliance upon the oral gift of the premises in 1920.

Some question is raised as to the competency of the witnesses in this case. The court apparently admitted all testimony offered by the defendants, regardless of whether the same related to a transaction with the deceased or not. If the testimony given by incompetent witnesses in this case were stricken from the record, very little would remain in support of either the verdict or the findings. Objection was made at every point. The court failed to pass on the objections. While we must assume that the court disregarded

evidence of incompetent witnesses and evidence not properly admissible, the course pursued leaves the record in a state of confusion. We shall not attempt the almost impossible task of separating the evidence given by incompetent witnesses from evidence properly offered and received. If it were all properly received it would fall far short of sustaining the contention of the defendants.

It is claimed by the defendants and found by the court that the deceased lived in the Schuerbrock family for thirty-five years and during the entire time never contributed a single cent toward the support of the family or in any way compensated the Schuerbrocks otherwise than by the alleged gift of the premises in question. It appears that the children from the time they began to be wage earners made contributions to the household, as also did the sister, Marie Bartels, a woman three years the senior of the deceased. Apparently every one connected with the household except the deceased bore some share of the common burden. We regard the testimony in support of this claim as so opposed to human experience and to all the established facts in this case as to be absolutely incredible and unworthy of belief. The deceased at first appears to have been dissipated, but beginning three months after he came to the Schuerbrock house he earned a salary in excess of $9 a week continually for seventeen years. The amount earned by him during the latter part of the period he was employed at Steinmeyer's is not established, but it is conceded that he was a competent, able business man, and no doubt he received a salary commensurate with his ability. It is admitted by the defendant that about 1903 or 1904 the deceased reformed; that thereafter he commenced to accumulate property; that in 1910 when he went into business he had accumulated $4,000, and, as already stated, he died possessed of an estate worth more than $30,000, including the house. If it be true that the deceased, who for twenty years at least was amply able to contribute to the family income, imposed himself upon the generosity

of the Schuerbrock family for thirty-five years without contributing a single cent, it would show him to be an ingrate bereft of those sentiments which are common to mankind, whereas the evidence shows without contradiction that he was of an opposite nature and that he was at all times solicitous for the welfare of his sister, and not only willing but anxious to reimburse her. If the testimony is not wholly incredible it falls short of that certainty and lacks that convincing power necessary to establish part performance on the part of the defendants.

That the deceased was mindful of his obligations to the defendant *Bertha* and her family is incontestably established by the fact that shortly prior to his death he attempted to make a will and dispose of his effects for the benefit of his sister and some members of her family. There is not a scintilla of evidence in the case that he ever at any time or in any manner repudiated his obligations to the Schuerbrock family, but on the contrary it appears that he at all times acknowledged them. It is a noteworthy fact that in this very stubbornly contested case, where a bit of corroborating evidence would have been so valuable, there is not produced a single line of writing in the shape of a letter or receipted bill or in any other form that substantiates the testimony given by interested witnesses. A careful consideration of the evidence leads us irresistibly to the conclusion that the claim of this family that the deceased never contributed a single cent to the family purse, or shared to any extent the family burden, or compensated his sister in any way for services rendered to him, is untenable and opposed to all reasonable probabilities in the case. Courts are not bound by testimony so opposed to the common knowledge and experience of mankind and contradicted by all the conceded facts in the case. *Samulski v. Menasha P. Co.* 147 Wis. 285, 133 N. W. 142. See, also, note in 8 A. L. R. 796.

We are not unmindful of the weight which should be given to the findings of the trier of the facts. We cannot,

however, escape the conclusion that the trial court gave to the findings of the jury more weight than they were entitled to. Applying to the case the rule that a verdict of a jury in a jury case is conclusive if there is any credible evidence to support it, it is considered that the evidence in this case would not support a verdict in favor of defendants. The improbabilities in the case do not rest entirely upon the conduct of the deceased. It is most unlikely at least that a family situated as the Schuerbrock family was would have maintained gratuitously a relative to whom they were under no legal obligation without any compensation whatever, he being able to pay, for a period of thirty-five years. One need not have had very much experience of life to know that while such a state of affairs might exist it is highly improbable, particularly in this family where every other member of it made an appropriate response to the needs of the family and contributed to the family support.

For the reasons already stated, the defendants are not entitled to an accounting or an equitable lien upon the premises for any advances made by them on account of improvements or payment of taxes. It appears from the testimony that the defendant *Bertha* has filed a claim against the estate of the deceased for some $20,000, Marie Bartels, sister of the deceased, has filed a claim for $6,000, and Adele Schuerbrock has filed a claim for $1,500. The county court has jurisdiction of these claims and is possessed of ample power to protect and safeguard the interests of the claimants, whatever they may be.

*By the Court.*—Judgment appealed from is reversed, and cause remanded with directions to enter judgment for the plaintiffs as prayed in the complaint.

A motion for a rehearing was denied, with $25 costs, on March 6, 1928.