ROPATI ONOFIA and SIA ONOFIA, Plaintiffs,

.v.

MARITIANA SUA PITOITUA, Defendant.

CA No. 56-96

---

MERITIANA LOTO, Plaintiff,

v.

ROPATI ONOFIA and SIA ONOFIA, Defendants.

LT No. 5-97

High Court of American Samoa
Trial Division and Land and Titles Division

December 10, 1997

Before RICHMOND, Associate Justice, LOGOAI, Associate Judge, and SAGAPOLUTELE, Associate Judge.

Counsel: For Ropati and Sia Onofia, Aumoeualogo S. Salanoa
For Meritiana Loto, Gata E. Gurr

OPINION AND ORDER

In 1996, plaintiffs/defendants Ropati Onofia ("Ropati") and Sia Onofia ("Sia") initiated suit, CA No. 56-96, in the Trial Division against defendant/plaintiff Meritiana Sua Pitoitua aka Meritiana Loto ("Meritiana"). Ropati and Sia sought damages for money paid to purchase land, the costs of clearing, cleaning, and cultivating the land, and the value of the house they built on the land. In 1997, Meritiana filed suit, LT No. 5-97, in the Land and Titles Division to evict Ropati and Sia from the land. She also alleged that Ropati assaulted Meritiana's husband and that Ropati and Sia disturbed the peace, took neighbors' property, and ignored eviction letters.

The cases were consolidated for trial. At the trial, on October 8, 1997, Ropati and Sia requested specific performance as alternative relief and, for this purpose, moved to amend the pleadings to conform to the evidence under T.C.R.C.P. 15(b). Meritiana did not pursue the assault, peace disturbance, and trespass/conversion issues.

## Core Issue

The key to this case is whether a valid, enforceable agreement to sell land between Meritiana as seller and Ropati and Sia as purchasers exists.

## Facts

Meritiana and Sia were the principal players. In October 1993, Ropati and Sia needed a place to live, and because of previous interactions, Sia approached Meritiana. She allowed Ropati and Sia to move into her house on individually owned land in Tafuna, American Samoa for a brief period of time. Ropati and Sia also wished to buy a parcel within this land for their permanent home. On or about October 4, 1993, Meritiana showed Ropati and Sia a parcel and orally offered to sell them this parcel for $5,000, subject to successful outcome of other pending litigation affecting this part of the land. Ropati and Sia paid Meritiana $300 down at this time.

On or about February 6, 1994, Meritiana authorized and later Ropati and Sia constructed a shack, which cost about $2,400, near Meritiana's house. Sia testified that at that time, Meritiana also orally agreed to sell Ropati and Sia a parcel for the same $5,000 price at that location in lieu of the parcel under litigation. Sia paid $500 down for this parcel and agreed to $300 monthly payments for the $4,200 balance. Sia's daughter memorialized this agreement in a handwritten note. The note, however, is not signed by Meritiana, who denies the parcel substitution, and it fails to mention the $300 monthly payment term.

Although Ropati and Sia did not make payments in $300 monthly increments for the second parcel, Sia documented disbursements of varying amounts totaling $2,534.75, which were paid to Meritiana after February 1994. Sia admitted that Meritiana sporadically requested small sums as

160

loans, all but one of which ranged from $5 to $100. Sia also claimed, however, that Meritiana agreed to apply these amounts as payments towards the purchase of this parcel.

Meritiana signed receipts for only $315 of the total amount claimed. One receipt, No. 096, dated April 1994, is for $100, but bears an additional interlineated notation of $60. A sequential receipt on the same type of form, No. 097, is for $100 and is dated April 13, 1993. We believe, however, that receipt No. 097 was actually issued in 1994. The last two receipts of this group which are on a different type of form, No. 1905 for $30 and No. 1906 for $25, are dated October 13 and 19, 1994 respectively. Receipt No. 1906 bears the notation "Land only" and is the only receipt that even suggests in writing any connection with a land transaction.

Sia also presented two other notes written by her daughter, which allegedly record payments to Meritiana toward the land purchase. One note lists 16 entries, totaling $659.75. The other contains 17 notations, totaling $510. Neither note is signed by Meritiana, who denies receiving any of these amounts, either as land purchase payments or small loans. Meritiana insists that she always gave receipts for any sums of money she procured from Sia.

Sia testified that she paid the remaining $1,050 to Meritiana. She offered a receipt, No. 1286, dated October 14, 1993, as proof of this payment. This receipt shows a $50 payment on account for an $80 obligation, with an added notation of another $1,000 still outstanding. Changes have been made to this receipt. The due date of this payable, listed as January 7, 1995, appears to have been changed to 1994, or vice versa. Not only does this receipt not bear Meritiana's handwriting, but it also seems, on its face, to relate to car repairs, not a land transaction. Meritiana denied any connection with this activity, and we believe this to be the case.

Sia also declared that, with Meritiana's permission, she and Ropati extensively cultivated land both adjacent and further afield from their shack. If they are evicted from the land, Ropati and Sia expect compensation for their lost plantation, which they value at $25,000, as well as the money they spent to buy land from Meritiana and construct their shack. Meritiana, however, views this cultivation as payment in kind for Ropati's and Sia's temporary use of the parcel adjacent to her house.

We also have in evidence a quitclaim deed conveying the entire land to Meritiana, her sister Vaililo Werner ("Vaililo"), and her brother Aniga Su`a, Jr ("Aniga").

## Discussion

We conclude that for three fundamental reasons, Ropati and Sia did not have a valid, enforceable agreement to purchase any of the land from Meritiana.

■ First, one tenant in common cannot sell or bind the interest of another co-tenant without proper authorization, *Thompson v. Bowman*, 6 Wall 316, 18 L.Ed. 736 (1867); including any specific portion of that estate. *Praire Oil & Gas Co. v. Allen*, 2 F.2d 566 (8th Cir. 1924). Meritiana, Vaililo, and Aniga own the entire land as tenants in common. No exception to this limitation on a co-tenant's authority to convey land owned in common applies in this case.

■ Second, parties to a contract for the sale of land must mutually assent to their agreement, tested by an objective or external standard. *Ricketts v. Pennsylvania R.R.*, 153 F.2d 757, 761 n. 2 (2nd Cir. 1946). Meritiana understood that she was agreeing to sell a parcel in a portion of land involved in litigation, when and if she prevailed in that lawsuit. Ropati and Sia believed that they were buying a different parcel, one immediately adjacent to Meritiana's house. Even though Ropati and Sia spent $2,400 to construct a shack on this second parcel and cultivated land on and near this parcel, these actions do not meet the legal standard of mutual assent. Meritiana denies the substitution of parcels, and no other objective evidence exists to show any meeting of the parties' minds on the sale of this second parcel.

■ Third, in American Samoa, a contract for the sale of land must be in writing, supported by some written evidence signed by the party to be bound or his authorized agent. Our Statute of Frauds, A.S.C.A. § 37.0211, reads:

> No agreement for the sale of real property or any interest therein is valid unless the same, or some note or memorandum thereof, be in writing and subscribed by the party to be charged or his agent thereunto authorized in writing but this does not abridge the power of any court to compel the specific performance of any agreement for the sale of real property in case of part performance thereof.

■ Ropati and Sia did not have a written contract with Meritiana for the purchase of land. The notation "Land only" on receipt No. 1906 is ambiguous as to the nature of the refererenced transaction and does not identify any particular parcel of land. This receipt is not a sufficient memorandum to bind Meritiana to a land sale. Moreover, Ropati and Sia did not make any subsequent $300 monthly payments after the initial payment. A claimant cannot successfully assert part performance when he

162

fails to keep his own bargain. *Marshall & A. Bank v. Samiabrock*, 217 N.W. 416 (Wis. 1928).

For these reasons, we conclude that Ropati and Sia did not have a valid, enforceable agreement with Meritiana for the purchase of any land. They are therefore not entitled to specific performance of the alleged agreement. *Goodrich v. Lathrop*, 29 P. 329 (Cal. 1892).

On the other hand, Meritiana borrowed small sums from Sia from time to time and failed to repay debts which should be paid. The total amount claimed is $3,334.75, including the $300 paid in October 1993, $500 paid in February 1994, $315 in receipts signed by Meritiana, $1,169.75 listed by Sia's daughter, and the $1,050 car repair receipt. Sia's assertion of any right to be refunded the car repair sum is incredible. Hence, we conclude that Sia is entitled to recover only $2,284.75 from Meritiana.

Ropati and Sia occupy land owned by Meritiana, Vaililo, and Aniga under a revocable license. Meritiana revoked that license and is now entitled to evict Ropati and Sia from the land. Ropati and Sia constructed their shack on the land with Meritiana's permission, and they are now entitled to remove this building from the land. *Talo v. Tavai*, 2 A.S.R. 63, 72-74 (Trial Div. 1939).

Ropati and Sia were permitted by Meritiana to cultivate portions of the land both within and outside the boundaries of the parcel in dispute. Sia's evaluation of the crops at $25,000 is outrageously excessive, but Ropati and Sia are at least entitled to the current fruits of their farming endeavors to prevent Meritiana's unjust enrichment. *Id.*

## Order

1. Ropati and Sia are denied specific performance and are evicted from the land owned by Meritiana, Vaililo, and Anigo.

2. Ropati and Sia shall vacate the land owned by Meritiana, Vaililo, and Anigo within 60 days of entry of this opinion and order. They may remove their shack from the land within this 60-day period, but if they fail to do so, the shack becomes the property of Meritiana, Vililo, and Anigo. They may also harvest, within this 60-day period, any mature crops which they previously planted, but any trees and other permanent plantings shall remain on the land as the property of Meritiana, Vaililo, and Anigo.

3. Meritiana shall pay $2,284.75 to Sia in repayment of funds borrowed by Meritiana from Sia. Meritiana shall make this payment in full within 60 days of entry of this opinion and order. If she fails to do so, she may pay installments of no less than $100 per month, plus interest at 6% per annum, on the balance then owing, commencing on the 15th day of the first full

month after the 60-day period and continuing until the entire sum is paid in full.

4. Each party shall pay their respective attorney's fees and costs.

Judgment shall enter accordingly. It is so Ordered.